IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ELIJAH TAUMUA,<br><br>Defendant. | Case No. 26-cr-00020-DKW-1<br><br><br>**ORDER GRANTING DEFENDANT ELIJAH TAUMUA'S MOTION TO SUPPRESS NO. 1 (BLUE BAG)** |

Defendant Elijah Taumua moves to suppress evidence—in particular, a firearm—obtained from a "blue bag" that was searched by officers of the Honolulu Police Department (HPD) on August 5, 2025 after they concluded that the bag had been "abandoned".   The United States opposes suppression, arguing, among many other things, that the HPD officers reasonably determined that the bag had been abandoned and/or, at the very least, had a "good faith" basis to believe so under the facts of this case.

Upon review of the parties' briefing, applicable case law, and the evidence presented at hearings on May 12 and May 13, 2026, the Court finds that the facts do not show that the "blue bag" was abandoned when the HPD officers happened upon it on the day in question.   The facts also do not show that the HPD officers even had a "good faith" basis to believe so.   Therefore, for the reasons discussed

further below, the motion to suppress, Dkt. No. 40, is GRANTED, such that none of the items obtained from the "blue bag" may be used as evidence in this case.

## BACKGROUND

### 1.   The "Blue Bag"

On August 5, 2025, at approximately 6:30 p.m., HPD dispatched Officer Chester Desiderio to address a noise complaint at Building 32 of Kalihi Valley Homes (KVH).   May 12, 2026 Transcript (5/12/26 Tr.) at 68:25-69:5, 81:9-21, Dkt. No. 81.   KVH is a "government-funded low-income housing" project, which Officer Desiderio believes is a "very high-crime area."   *Id*. at 71:1-10.   After arriving at KVH, Officer Desiderio motioned to a "bunch of males" to turn down their music, and they complied.   *Id*. at 82:8-15.

At around 8:05 p.m., Officer Desiderio was called back to KVH and Building 32 to handle another noise complaint.   *Id*. at 84:4-12.   HPD Officer Justin Nakakuni joined him.   *Id*. at 17:7-18:10, 85:1-16.   Officer Desiderio and Officer Nakakuni's Incident Reports described the ensuing events as follows:

> Upon arrival, observed about nine (9) male individuals in the area. Loud music being played from an unknown type of portable speaker. As I walked up the stairs leading up to Bldg. 32, the music volume was turned down. I observed empty cans of what looked like as Monster Beast, a known alcoholic beverage.… I then told the group of male[s] that they need to vacate the area because this is the second time that we got called for the noise. I also told the group not to leave any trash. The group eventually all moved to an area by Bldg. 40 and

2

41. While the group of males was cleaning and picking up empty cans, we noticed a couple of the males acting strange around the area of a laundry washer, like they were looking for something but also looking at us if we are watching them.…After the group left the area, I told Officer J. Nakakuni to look around the area just in case there's more alcohol or edge weapons that was left behind. This was because through my experience with these type of groups at [KVH], they tend to leave cases of alcohol or edge weapons nearby which is often picked up by young kids. While looking around in the area, Officer J. Nakakuni found an abandoned blue in color two-strapped backpack beside a laundry washer at 2019 hours. Officer J. Nakakuni picked it up and said it is heavy. Officer J. Nakakuni then said that we all return to where we parked our cars. Officer J. Nakakuni opened the bag and saw a gun within the main compartment of the bag.

Dkt. No. 40-3 at 1-2 (Officer Desiderio's Incident Report).

Upon my arrival[,] I observed approximately nine males loitering in the area. There was trash strewn about. Officers dispersed the males and they left the area. Prior to leave the area[,] a few of the males were acting suspiciously by looking at Officers then looking towards the back area of the property which is covered with high grass and bushes. Due to the KVH property being a known area for nuisance involving alcohol, violence, and weapons, Officers checked the area for anything suspicious. I located an abandoned 'MCM' brand, blue in color with black print, leather-type material, bag with two straps. The bag was located next to a washing machine on the Mauka [mountain] side of KVH Building 32. This area is an area that is open to the public. The bag was abandoned and unattended. The bag appeared to be valuable and possibly contained items of value. There was nobody around who claimed ownership of the bag. Due to not wanting anyone to steal the bag, I recovered it as Found Property.

Dkt. No. 40-1 at 2-3 (Officer Nakakuni's Incident Report).

The officers' testimony on May 12, 2026 provided the following further

information.   According to Officer Nakakuni, on August 5, 2025, the group of

3

males at KVH "acted suspiciously[,] [l]ooking toward the back area of the property, the grassy area in the back with [a] cement wall."   *Id*. at 26:11-13, 27:4-9.   Officer Nakakuni interpreted this as meaning that there was something "of interest" in the grassy area in the back.   *Id*. at 27:10-11.

Officer Nakakuni did not activate his body-worn camera (BWC) upon arriving at KVH, even though HPD policy required him to do so on arrival. 5/12/26 Tr. at 20:25-21:11, 108:4-21.   Officer Nakakuni, instead, activated his BWC when he "recovered" the blue bag.   *Id*. at 23:5-8.   Officer Desiderio also activated his BWC at that time.   *Id*. at 100:14-19.   Like Officer Nakakuni, Officer Desiderio did not activate his BWC on arrival or at any time prior to the recovery of the bag.   *Id*. at 89:5-16.   Both Officers Desiderio and Nakakuni were hoping for a "quick resolution" of the noise complaint, prompting both to avoid timely activation of their BWCs—something which would have necessitated filling out a report.   *Id*. at 21:12-18, 50:23-51:12, 89:19-90:10.

A video of Officer Nakakuni's BWC begins with Officer Nakakuni "looking at the back tall grass hill area located by [the] cement wall[]" because this was the area behind Building 32 to which the males' attention seemed drawn.   5/12/26 Tr. at 27:24-28:5; Exhibit A-2 at 20:19:19, Dkt. No. 40-2.   Officer Nakakuni did not locate anything in the grassy area by the cement wall.   5/12/26 Tr. at 28:17-19.

4

The video of his BWC then turns to the exterior of Building 32 where a washing machine was located.   *Id*. at 29:1-4; Exh. A-2 at 20:19:19-37.   The washing machine abutted Building 32 on a cement area around the Building's perimeter. 5/12/26 Tr. at 29:3-4; Exh. A-2 at 20:19:35-37.   At the base, and on the right side, of the washing machine, sitting on what appears to be a small section of wooden pallet, was a blue bag.   5/12/26 Tr. at 32:5-8, 33:22-23; Exh. A-2 at 20:19:37-46. It was at this point that Officer Nakakuni activated his BWC.   Exh. A-2 at 20:19:49; 5/12/26 Tr. at 32:15-17.[1]   According to Officer Nakakuni, the blue bag "looked to be valuable and possibly contained items of value, so I did not want anybody to steal the bag."   5/12/26 Tr. at 33:19-20.   Other than the blue bag, nothing else was left in the area near Building 32 in which the males had been located.   *Id*. at 97:6-9.

When Officer Nakakuni picked up the blue bag, it felt heavy.   5/12/26 Tr. at 38:8-10.   Officer Nakakuni returned to his vehicle with the blue bag and opened it while in the KVH parking area.   *Id*. at 38:15-17, 40:14-41:1.   Inside, he saw a "Glock-type firearm, with a silver slide and a black frame, along with an extended

---

[1]A 30-second "loopback feature" explains why the BWC video begins with Officer Nakakuni looking in the "grass hill area" by the cement wall, rather than with Officer Nakakuni next to the blue bag.   5/12/26 Tr. at 32:20-22, 53:6-11.   In other words, 30 seconds before activating his BWC, Officer Nakakuni had been searching the grassy hill area for what he describes as contraband.

magazine, which was seated inside of the firearm." *Id*. at 41:3-5, 10-12.   The

extended magazine was capable of holding more than ten rounds of ammunition.

*Id*. at 41:16-17.

Although the group of males had been "several feet away" or "five to six

feet away[]" from the washing machine at one point, none of the officers observed

the blue bag being handled by any of the males at any time.   5/12/26 Tr. at 29:13-

25, 93:1-15, 120:17-20.   More specifically, Officer Desiderio did not see any of

the males throw anything to the ground, place the blue bag near the washing

machine, carry the blue bag, or move the blue bag.   *Id*. at 94:9-17.   Officer

Desiderio also did not hear any of the males say anything about a blue bag, ask to

retrieve anything from the area near the washing machine, or say anything about

returning to the area.   *Id*. at 94:18-95:4.   Similarly, Officer Nakakuni did not see

any of the males pick-up, touch, or discard the blue bag.   *Id*. at 35:2-7.   Neither

Officer Desiderio nor Officer Nakakuni knocked on any of the doors of Building

32 to inquire about the blue bag.   *Id*. at 58:23-25, 113:1-3.   Nor did the officers

ask any of the males about the bag.   *Id*. at 118:23-119:9.

Officer Desiderio believed the blue bag had been "abandoned" because it

was "just laying there, like no – you know, and to me, if I have to think about it,

people don't want to be caught with it, you know? Or they just – it's something

that they – they just abandoned in the area."   *Id.* at 98:7-10.   Officer Nakakuni believed the blue bag had been "abandoned" due to "the circumstances of the incident, the males that were acting suspiciously, looking towards us, looking towards the area in which I found the bag, and prior to them leaving, I had told them to pick up their property, clean up their trash and leave."   5/12/26 Tr. at 34:22-35:1.   Although Officer Nakakuni believed that the blue bag had been abandoned, he also testified that he did not follow HPD's written policy on when property may be considered abandoned.   *Id.* at 59:13-15.

## 2.    This Case

On February 26, 2026, a grand jury returned an indictment charging Defendant Elijah Taumua with a single count of possession of a machinegun in violation of 18 U.S.C. Sections 922(o) and 924.   Dkt. No. 27.

On April 14, 2026, Taumua filed three motions to suppress, Dkt. Nos. 40-42, with only the first of those motions addressed in this Order.   In that first motion, Dkt. No. 40, Taumua seeks to suppress all evidence, including the firearm, obtained or "derived" from the blue bag on August 5, 2025.   Taumua argues that suppression is warranted under the Fourth Amendment because (1) the blue bag was not abandoned, (2) the warrantless search of the bag was unreasonable, and (3)

7

all evidence derived from the contents of the blue bag is "tainted" by the warrantless search.

The Unites States opposes.   Dkt. No. 51.   The United States argues, *inter alia*, that (1) the blue bag was "ditched" by Taumua's friends, *i.e.*, the group of males referenced above, and, thus, abandoned, (2) the "objective circumstances" provided Officer Nakakuni with a "good faith" belief that the blue bag had been abandoned, and (3) if the bag was not abandoned, it was "more likely accidentally lost", with Officer Nakakuni lawfully seizing it "under his community-caretaking duties."[2]

Taumua filed a reply in support of the first motion to suppress, Dkt. No. 60, arguing, *inter alia*, that (1) the "only objectively reasonable inference" from the facts of this case is that the blue bag was "unattended", not abandoned or lost, (2) the government has failed to meet its burden of showing the bag was abandoned,

---

[2]The United States also makes a series of arguments related to Taumua's standing to "challenge the position of Officer Nakakuni when [he] collected the bag."   Dkt. No. 51 at 28-41.   In his reply, Taumua represents that he is not challenging the *position of Officer Nakakuni* when he obtained the bag.   *See* Dkt. No. 60 at 10-11.   Therefore, the Court does not further address these arguments.

(3) the "community-caretaking exception" does not apply, and (4) the allegedly unconstitutional search of the bag "taint[s]" all evidence collected in this case.

On May 12 and 13, 2026, the Court held a two-day evidentiary hearing on Taumua's motions, including the first motion to suppress, with counsel for both parties present and at which Officers Desiderio and Nakakuni, among others, testified.   Dkt. Nos. 72-73.   This Order on the first motion to suppress now follows.

## LEGAL STANDARDS

Taumua moves for suppression under the Fourth Amendment.   The Fourth Amendment, in relevant part, provides that persons shall be secure in their effects from unreasonable searches and seizures.   "Warrantless searches are presumptively unreasonable under the Fourth Amendment, subject to certain exceptions."   *Verdun v. City of San Diego*, 51 F.4th 1033, 1037-38 (9th Cir. 2022).   However, "warrantless searches or seizures of abandoned property do not violate the Fourth Amendment" because "persons who voluntarily abandon property lack standing to complain of its search or seizure."   *United States v. Baker*, 58 F.4th 1109, 1116 (9th Cir. 2023); *United States v. Kendall*, 655 F.2d 199, 200 (9th Cir. 1981).   Whether a person has voluntarily abandoned property is determined by objective standards.   *Kendall*, 655 F.2d at 201.   More specifically,

9

an intent to abandon "'may be inferred from words, acts, and other objective facts.'"  *Id*. (quoting *United States v. Jackson*, 544 F.2d 407, 409 (9th Cir. 1976)). The Ninth Circuit has further explained that there are "two important factors in this inquiry: the denial of ownership and the physical relinquishment of the property." *Baker*, 58 F.4th at 1118.

When a search violates the Fourth Amendment, the U.S. Supreme Court "has at times required courts to exclude evidence obtained by unconstitutional police conduct."  *Utah v. Strieff*, 579 U.S. 232, 234-235 (2016).   This is known as the "exclusionary rule" and it includes "evidence later discovered and found to be derivative of an illegality[.]"  *Id*. at 235, 237 (quotation omitted).   The Supreme Court has explained, however, that the exclusionary rule is only applicable "where its deterrence benefits outweigh its substantial social costs."  *Id*. at 237 (quotation omitted).   In particular, the inquiry is "confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal in light of all of the circumstances."  *Herring v. United States*, 555 U.S. 135, 145 (2009).

## DISCUSSION

Taumua moves for suppression, essentially arguing that there was no basis for Officer Nakakuni to search the blue bag on August 5, 2025.   The United States

10

disagrees, arguing that the search was reasonable for three reasons: (1) the blue bag had been abandoned, (2) Officer Nakakuni had a good faith belief that the blue bag had been abandoned, or (3) the blue bag was lost and, in searching and seizing it, Officer Nakakuni was carrying out his "community-caretaking" functions.   None of the above-stated reasons support the search and seizure of the blue bag.

The Court first addresses abandonment—the reason actually given by Officers Desiderio and Nakakuni for the search and seizure of the blue bag.   Upon review of the factual record, whether paper or testimonial, there are *no objective facts* supporting the proposition that the blue bag had been abandoned on August 5, 2025 when Officers Desiderio and Nakakuni stumbled upon it.   The general legal background on the principle of abandonment is largely undisputed: abandonment occurs following a "disclaimer" of ownership and/or "relinquishment" of an item. *See* Dkt. No. 40 at 17; Dkt. No. 51 at 45; *Baker*, 58 F.4th at 1118.   There is patently nothing in the record supporting either in this case.   Officers Desiderio and Nakakuni never saw the bag physically even possessed, much less relinquished, by anyone, such as by "ditch[ing]" it, and they never heard anyone verbally disclaim it.   In fact, the officers did not even see anyone touch or mention the bag.   It is, thus, almost incomprehensible how any reasonable police officer could have believed that the blue bag had been *abandoned*.

11

The United States' assertions to the contrary offer little resistance. Notably, the government's entire position is premised upon facts that do not exist in this record: "they ditched the bag" and "the [males'] leaving the bag on the ground" are but two examples. Dkt. No. 51 at 46. As just mentioned, there are *no facts*, objective or otherwise, that the bag was ditched or left behind by the males. Instead, at best, the officers had no understanding of the bag's status, which is hardly surprising given that they never saw anyone touch or mention the bag or even see the bag themselves until they decided to seize it. As for the government's reliance on supposed "shady movements" by certain of the unknown males in the vicinity of Building 32, there is no case cited for the proposition that "shady movements" unrelated to physically dropping an item constitute relinquishment. In addition, the record the government relies on is hardly a model of clarity regarding the foci of the males' alleged shady movements.[3] The Court, thus, puts no weight on these alleged observations of the officers, at least with respect to whether the blue bag was abandoned.

---

[3]Specifically, while, at times, Officer Nakakuni testified that the males' attention was drawn to where the blue bag was found—*i.e.*, leaning against the washing machine—at other times, he testified that the males' attention was drawn to "the grassy area in the back with [a] cement wall[,]" which is not the area where he found the bag. The idea that the males' attention was drawn to "the back area of the property which is covered with high grass and bushes", rather than to the area of the washing machine, is supported by Officer Nakakuni's Incident Report. Some level of clarity, of course, could have been obtained had either officer bothered to comply with HPD policy concerning the use of BWCs.

The next inquiry is whether Officer Nakakuni believed in good faith that the blue bag had been abandoned.   For the reasons discussed above and below, he could not possibly have done so.   As explained, this inquiry is "confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal in light of all of the circumstances." *Herring*, 555 U.S. at 145.   Here, to repeat, there are no objective facts suggesting the blue bag had been abandoned.   There is also nothing in HPD's express policy statement on abandonment supporting the concept that the blue bag was abandoned.   Notably, the policy states, *inter alia*, that abandonment must be "overt and positive" and must demonstrate the "voluntary relinquishment of control over property."   Exhibit G at 7, Dkt. No. 40-10.   Again, there is simply nothing overt or positive related to the blue bag in this record.   It is, thus, unsurprising that Officer Nakakuni testified that he did not follow HPD's abandonment policy with respect to the blue bag.   *See* 5/12/26 Tr. at 59:13-15.

With no objective facts supporting the idea that the blue bag was abandoned, and with Officer Nakakuni essentially ignoring, or at least not remembering, HPD's policy on abandonment, the Court finds that a reasonably well-trained officer would have known that the search of the blue bag was illegal in light of all

13

the circumstances of this case.[4]   *See Herring*, 555 U.S. at 145.   The Court, thus, finds that there was not a good faith basis to search the blue bag.

The United States' remaining argument is that, because the blue bag was "lost", Officer Nakakuni could validly search the bag in exercising his so-called community-caretaking duties as a police officer.   This argument fails for at least two reasons.   First, putting aside that neither Officer Desiderio nor Officer Nakakuni believed the blue bag was lost, *see* 5/12/26 Tr. at 34:22-35:1, 98:7-10, Dkt. No. 40-1 at 3, Dkt. No. 40-3 at 2, the objective facts do not support the same. The officers were not advised of a blue bag being lost, they did not ask anyone whether a blue bag had been lost, even after finding it, and, as discussed, they did not even see or hear anything related to the blue bag until they happened upon it sitting next to a washing machine.[5]   Second, Ninth Circuit and Supreme Court precedent do not support the exercise of a community caretaking function under the circumstances here.   *See Caniglia v. Strom*, 593 U.S. 194, (2021) (explaining that the community caretaking exception applies to automobiles and did not permit "an open-ended license" for police to perform "civic tasks" without a warrant);

---

[4]As the United States acknowledges, HPD's policy "tracks" the Fourth Amendment's definition of abandonment.   *See* Dkt. No. 51 at 52.

[5]Moreover, if any credence is given to the alleged "shady movements" of males in the direction of the washing machine, such movements would suggest that the blue bag was certainly not lost.

14

*Rodriguez v. City of San Jose*, 930 F.3d 1123, 1137-38 (9th Cir. 2019) (explaining that the community caretaking exception to the warrant requirement involves "an immediate threat to community safety").   As a result, community caretaking appears to be a Hail Mary excuse, not a justification, for the warrantless search of the blue bag.

Because the United States does not present any other reason for why the warrantless search of the blue bag should be considered reasonable under the Fourth Amendment or for why the exclusionary rule should not be applied,[6] Taumua's first motion to suppress, Dkt. No. 40, is GRANTED.

## CONCLUSION

Taumua's first motion to suppress, Dkt. No. 40, is GRANTED.   The contents of the blue bag, including the firearm, magazine, and ammunition, may not be used as evidence in this case.

Taumua's second and third motions to suppress, Dkt. Nos. 41-42, are HELD IN ABEYANCE.

---

[6]The Court notes that, although the government also argues that the inspection of the blue bag was "lawful" and/or discovery of the firearm was "inevitabl[e]", Dkt. No. 51 at 55-62, these arguments are premised upon the bag being abandoned or lost—as explained above, neither is true.   Therefore, the Court does not address these arguments further.

The Court will hold a status conference in this case on June 22, 2026 at 9:30 a.m. in Aha Kupono.   The parties are directed to file a joint status report no later than June 18, 2026.

IT IS SO ORDERED.

DATED: June 9, 2026 at Honolulu, Hawaiʻi.



Derrick K. Watson
Chief United States District Judge

---

*United States v. Taumua,* Case No. 26-cr-00020-DKW-1; **ORDER GRANTING DEFENDANT ELIJAH TAUMUA'S MOTION TO SUPPRESS NO. 1 (BLUE BAG)**